**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| JAMES DOUGLAS SCHERMER, | Case No. 1:13-cv-736 |
| Plaintiff, | Dlott, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff James Schermer filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review. As explained below, the ALJ's finding should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") in June 2010, alleging a disability onset date beginning in February 2008 due to depression and anxiety. Plaintiff's applications were denied initially and on reconsideration, and he timely requested an evidentiary hearing before an administrative law judge ("ALJ").

On April 24, 2012, ALJ Kristin King held a hearing at which Plaintiff appeared, represented by counsel. (Tr. 27-55). Plaintiff was 41 years old at the hearing, as well as at the time of the ALJ's subsequent decision. During the hearing, Plaintiff amended his disability onset date to January 1, 2010, and testified to past relevant work as a real

estate appraiser and as a pizza delivery driver. A vocational expert also testified. On May 21, 2012, ALJ King issued an unfavorable written decision. (Tr. 9-21).

The ALJ found that Plaintiff has not engaged in substantial gainful activity since 2010. (Tr. 11). She determined that Plaintiff suffers from severe mental impairments including panic disorder with agoraphobia, generalized anxiety disorder, mood disorder, and polysubstance abuse currently in remission. (Tr. 11). However, the ALJ found that none of Plaintiff's impairments or combination of impairments met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpt. P, Appx. 1. (Tr. 12). Instead, she determined that Plaintiff retains the residual functional capacity to perform a full range of work at all exertional levels, with only a few non-exertional limitations. Specifically, she concluded that Plaintiff

> is limited to performing simple, routine, repetitive tasks involving no more than occasional interaction with the public. However, he cannot engage in transactional interaction with the public, such as sales or negotiations. The claimant can have no more than occasional interaction with co-workers and supervisors. He is limited to low stress work, which is defined as work having no more than occasional changes in the work setting. The claimant is limited to no constant production rate pace work, but can instead perform goal-oriented work.

(Tr. 14).

The ALJ additionally concluded that Plaintiff's limitations preclude his past relevant work as an appraiser or driver. (Tr. 19). Nonetheless, given his age, high school education, experience, and RFC, the vocational expert testified, and the ALJ found, that Plaintiff could perform other jobs that exist in significant numbers in the national economy, including such representative jobs as cleaner at the light or medium levels, light dishwasher, light price marker, light mail sorter, or light laundry worker. (Tr. 20). Therefore, the ALJ determined that Plaintiff was not disabled. (*Id.*). The Appeals

Council denied Plaintiff's request for further review, and the ALJ's decision remains as the final decision of the Commissioner.

Plaintiff's only claim in this appeal is that the ALJ erred declining to give controlling weight to the opinions of his treating physician, and by instead giving greater weight to the opinions of agency consultants. For the reasons stated, I find no error.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

3

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920. A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. §404.1512(a).

**B. Error Asserted**

**1. Standards Applicable to Medical Opinion Evidence**

Plaintiff claims that the ALJ erred by improperly evaluating the medical opinion evidence. In particular, Plaintiff contends that the ALJ should have fully accepted the opinions of his treating psychiatrist, Dr. Quinton Moss. The relevant regulation

4

regarding treating physicians provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004). The reasoning behind what has become known as "the treating physician rule" has been stated as follows:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting former 20 C.F.R. § 404.1527(d)(2)). Thus, the treating physician rule requires the ALJ to generally give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009).

In addition to criticizing the rejection of Dr. Moss's opinions, Plaintiff asserts that the ALJ erred by giving greater weight to the opinions of three psychological consultants. The regulatory framework of the Social Security Act also provides guidelines for the evaluation of the opinions of consulting physicians. In general, the opinions of a consulting physician who has actually examined the plaintiff will be given more weight than that of a non-examining consultant, with treating physicians alone to be given controlling weight. *See* 20 C.F.R. §404.1527(d)(1) and (d)(2). However, these regulatory presumptions remain subject to individual variations. Thus, in *Blakley* the

Sixth Circuit reiterated the principle that "[i]n appropriate circumstances, opinions from State agency medical...consultants...may be entitled to greater weight than the opinions of treating or examining sources." (*Blakley*, 581 F.3d at 409, quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996)).

In *Blakley,* the court reversed on grounds that the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment...by Blakley's treating sources," and the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions. *Blakley*, 581 F.3d at 409 (*quoting Fisk v. Astrue*, 253 Fed.Appx. 580, 585 (6th Cir. 2007)). Under *Blakley*, then, an ALJ may choose to credit the opinion of even a non-examining consultant who has failed to review a complete record, but he or she should articulate her reasons for doing so. If he/she fails to provide sufficient reasons, the opinion still may be affirmed if substantial evidence supports the consultant's opinion and any error is deemed to be harmless or *de minimis*.

**2. Treating Physician Quinton Moss, M.D. and Three Consulting Sources**

Dr. Moss began treating Plaintiff in July of 2010. On April 12, 2012, Dr. Moss offered several opinions in both narrative form and through the completion of a "medical assessment of ability to do work related activities" form. (Tr. 807-812). In the narrative portion, Dr. Moss indicated that Plaintiff would "struggle with dealing with work related stressors," including "task completion with efficiency and proficiency," although he also stated that Plaintiff "has improved to a moderate degree with psychostimulant," suggesting a less debilitating outlook. (Tr. 807). Dr. Moss further opined that Plaintiff would have "difficulty ...completing complex job instructions," and "difficulty engaging …in social interactions." (Tr. 807-808). The last sentence of his narrative report relates

6

to social interactions and is somewhat garbled, stating: "I believe that this maintain hair his ability to have reliable punctuality an appropriate consistent work-related performance." (Tr. 808).

On the "work related activities" form, four options are given in each category of assessment of Plaintiff's abilities: good, fair, poor, and none. The form asks the physician to rate fifteen discrete areas by check marks. In nine of the areas, Dr. Moss has rated Plaintiff as having "poor" abilities, defined as "seriously limited, but not precluded." Dr. Moss rated Plaintiff as having "good" ability to follow work rules, and "fair" abilities in four other areas. (Tr. 809-811). He rated "none" to denote that Plaintiff has no ability to "[u]nderstand, remember and carry out simple job instructions." (Tr. 811).

Despite acknowledging Dr. Moss status as a treating physician, the ALJ gave his opinions "no weight." The ALJ explained:

> Quinton Moss, M.D., reported in April 2012 that the claimant has had some psychological testing which has demonstrated a deficit in certain domains of attention and concentration, by virtue of which he "would struggle with consistent task completion with efficiency and proficiency" although he has improved to a moderate degree through the use of a psychostimulant. Dr. Moss reported that the claimant has difficulty engaging in a consistent manner in social interactions, limiting his ability to maintain healthy relationships over time, but that he has the ability to maintain reliable punctuality, and be appropriately consistent with work-related performance. He completed an assessment indicating that the claimant has poor ability to make various occupational adjustments, poor ability to understand and carry out complex or detailed job instructions, and no ability to understand and carry out simple job instructions. Dr. Moss indicated that the claimant has poor ability for making certain personal-social adjustments and fair ability in other areas of personal-social adjustment….
>
> The recent assessment provided by Dr. Moss is given no weight as it is internally inconsistent and is not supported by reference to specific instances in the medical record documenting such significant limitations. It is not reasonable that the claimant would be unable to understand and

7

> carry out *simple* job instructions, but would have at least poor ability to understand and carry out *detailed or complex* job instructions, and the fact that Dr. Moss marked the form with such an unreasonable set of findings suggests that he did not have an appropriate understanding of the form. Without such an appropriate understanding and the inconsistencies with the other evidence discussed above, the form as completed cannot be relied upon. Accordingly, it is given no weight.

(Tr. 18, emphasis added).

Plaintiff argues that the ALJ should have given controlling weight to Dr. Moss as a treating psychiatrist. However, the undersigned finds no error. As pointed out by the ALJ, Dr. Moss's assessment was internally inconsistent insofar as he opined that Plaintiff had no useful ability to understand, remember, and carry out "simple" job instructions, but nevertheless retained a "poor" ability (defined as "seriously limited, but not precluded") to understand, remember, and carry out "complex" job instructions. (Tr. 811). Plaintiff does not dispute that inconsistency. Instead, Plaintiff posits that the ALJ should have understood that Dr. Moss "seemed to mark the incorrect area," and contends that the inconsistency provides insufficient grounds to discount Dr. Moss's "entire" opinion.

However, the inconsistency was not the sole basis for discounting Dr. Moss's opinion. The regulations provide that the opinion of a treating physician is entitled to controlling weight only if it is "well supported" <u>and</u> "not inconsistent with…other substantial evidence." As the ALJ explained, Dr. Moss's opinion was neither.

Regarding the lack of support for Dr. Moss's opinion, the undersigned has reviewed the clinical records and agrees that his opinions are not well-supported by those records. While the clinical records support a degree of severe psychological impairment, they do not necessarily support a disabling level of severity. Contrary to such a finding, Dr. Moss's records frequently reflect objectively normal findings and

8

observations (*see, e.g.* Tr. 765, 781), with nearly all global assessment of functioning ("GAF") scores of "52." (Tr. 739, 742, 745, 748, 751, 754, 757, 760, 763, 766). While GAF scores are not determinative, a GAF score in the range of 51-60 generally indicates no more than moderate symptoms or limitations, consistent with an ability to work. In fact, several notes talk about Plaintiff looking for a job, with Dr. Moss's presumed encouragement. (Tr. 753, 756, 762).

In addition, the ALJ pointed out that Plaintiff had denied use of recreational drugs during prior psychiatric treatment (Tr. 614) even though the record clearly demonstrated longstanding marijuana, cocaine, and even heroin use, as well as heavy alcohol use, suggesting a "lack of credibility even to attending medical sources." (Tr. 15).

The undersigned further agrees with the ALJ's conclusion that Dr. Moss's more extreme opinions were "inconsistent" with other substantial evidence in the record including but not limited to the opinions of three other psychological consultants. For example, Plaintiff's daily activities were not entirely consistent with Dr. Moss's opinions concerning Plaintiff's functional limitations. Plaintiff testified that he watches television, plays video games, listens to music, does some yard work, cooks eggs, does his own laundry and simple housekeeping, and takes care of and plays non-stop with his eight-year-old daughter who visits every other weekend. (Tr. 12). Plaintiff testified to experiencing panic attacks only about once every two months, but also stated he is sometimes able to distract himself and keep them from happening. (*Id.*). Plaintiff indicated no difficulty interacting with a limited number of strangers when he takes his daughter to the toy store every couple of weeks. (Tr. 14). He also maintains limited social contact with friends, attends alcoholics anonymous meetings, and goes to the grocery store occasionally. (*Id.*). In fact, on an assessment form completed on

9

December 18, 2010, Dr. Moss indicated no restrictions, or "N/A," when asked to list "all significant restrictions of daily activities." (Tr. 565).

The ALJ also found Dr. Moss's assessment to be partially inconsistent with the report of a consulting examining psychologist, Jayne Malpede, PhD. Dr. Malpede examined Plaintiff in September 2010, and the ALJ gave her opinions "some weight." (Tr. 18). Dr. Malpede diagnosed social phobia along with moderate recurrent major depressive disorder, and polysubstance dependence then in remission. Like Dr. Moss, she assessed Plaintiff GAF score at 52, with a score of 54 from a "functional perspective," reflecting only moderate symptoms. (Tr. 562). However, unlike Dr. Moss, she opined that Plaintiff has no impairment at all in his ability understand and follow directions, and only mild impairment of his ability to maintain attention and perform routine tasks (as opposed to Dr. Moss's opinions that Plaintiff had mostly "poor" abilities in these areas). Dr. Malpede opined that Plaintiff has a moderate impairment for relating to others – again in contrast to Dr. Moss's mostly "poor" ratings. The only area of functioning in which Dr. Malpede found Plaintiff to be "markedly" impaired was his ability to withstand the stress and pressure associated with day-to-day work activity. However, with respect to that discrete area, she opined that his ability will likely improve if he continued to receive mental health treatment and was able to maintain sobriety. She noted that he has been able to maintain regular employment in the past, and suggests that he may benefit from services offered through the Bureau of Vocational and Rehabilitation Services. (Tr. 563).

Additional evidence that the ALJ found to be inconsistent with Dr. Moss's opinions were the evaluations of two non-examining consulting psychologists, dating October 2010 and January 2011. The ALJ explained that both consultants had access

10

to most of Plaintiff's mental health records, including clinical notes dating through August 2010 and Dr. Malpede's September 2010 report  The ALJ pointed out that a number of those records supported the consultants' opinions that Plaintiff's condition was stable, and resulted in only moderate limitations. (Tr. 17).  Both consultants opined that Dr. Malpede's assessment that Plaintiff was markedly impaired in his ability to withstand work stress was an overestimate of his limitations.  The consultants believed, and the ALJ found, that Plaintiff's RFC permitted him to complete simple tasks in a low stress environment.

Plaintiff argues that the ALJ should have at least given greater weight to Dr. Moss's opinions than to the opinions of the non-examining medical consultants.  In cases like this one in which a treating physician's opinion is not given controlling weight, the ALJ must articulate what weight has been given to the opinion, and provide "good reasons" for her decision.  *Blakley*, 581 F.3d at 406 (additional citations omitted).

Here, the ALJ clearly articulated "good reasons" for her decision to give "no weight" to Dr. Moss's opinions.  Plaintiff argues primarily that the ALJ should have given some weight to Dr. Moss's opinions, even if the ALJ believed that the opinions were not entitled to controlling weight.  In hindsight, the ALJ could have better articulated why he was giving the most weight to the January 2011 opinions of the non-examining consultant, even though Dr. Moss's April 2012 opinions post-dated that consultant's review.  *See Blakley*, 581 F.3d at 409.  However, having reviewed the record as a whole including but not limited to Dr. Moss's treatment notes, the undersigned finds, at most, harmless error in the ALJ's wholesale rejection of his opinions concerning Plaintiff's limitations.  For the reasons discussed, Dr. Moss's opinions were not well supported.  Despite the ALJ's failure to explicitly discuss the fact that the consultants' review

11

predated Dr. Moss's assessment, the ALJ provided "good reasons" for giving "no weight" to the April 2012 opinions, and those reasons are supported by substantial evidence in the record as a whole.

Last, it is worth pointing out that even if the ALJ had given Dr. Moss's functional opinions "some weight" instead of finding them to be entitled to "no weight," substantial evidence still would exist to support the non-disability finding in this case. In *Colvin v. Barnhart*, 473 F.3d 727 (6th Cir. 2007), the Sixth Circuit affirmed the Commissioner's determination despite a treating psychiatrist's opinion that the claimant had "poor" functional abilities in multiple areas on a similar form to that completed by Dr. Moss. In contrast to the ALJ in this case, the ALJ in *Colvin* accepted the treating physician's assessment, including the definition of a "poor" rating as "seriously limited but not precluded." However, the vocational expert testified that a "poor" rating in the referenced functional areas would not preclude the claimant from performing a "simple repetitive job." In affirming, the Sixth Circuit explicitly rejected the plaintiff's argument that a "poor" rating was "tantamount to a finding that one is unable to perform in that area." *Id.*, 475 F.3d at 731.

> The plain meaning of 'seriously limited but not precluded' is that one is not precluded from performing in that area….[T]he medical assessment form…also contained the "none" option, which is defined as "[n]o useful ability to function in this area."…If Colvin were completely precluded from functioning in an area, then [the psychiatrist] had the option of checking the "none" box…rather than checking the "poor" box.

*Id.* Therefore, the Sixth Circuit held that a treating physician's opinion that an individual was "seriously limited but not precluded" in any particular area "requires a review of the entire record in order to judge whether the balance tips toward functional ability or toward disability." *Id.*

In summary, the undersigned finds no error in the wholesale rejection of Dr. Moss's unsupported opinions, or in the adoption of the opinions of the examining and non-examining consultants, because Dr. Moss's opinions were both internally inconsistent and inconsistent with the record as a whole.  To the extent that a reviewing court would find that Dr. Moss's opinion nevertheless should have been accorded some weight, the undersigned alternatively finds no error based upon the analysis of *Colvin*, and because substantial evidence still exists in the record as a whole to support the Commissioner's decision.

### III. Conclusion and Recommendation

For the reasons discussed above, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** and that this case should be **CLOSED**.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

JAMES DOUGLAS SCHERMER,　　　　　　　　　　Case No. 1:13-cv-736

　　　　Plaintiff,　　　　　　　　　　　　　　　　　Dlott, J.
　　　　　　　　　　　　　　　　　　　　　　　　　Bowman, M.J.
　　v.

COMMISSIONER OF SOCIAL SECURITY,

　　　　Defendant

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

14